**Cheryl Stringer PIERCE, Appellant,**

v.

**The STATE of Texas.**

No. 0301–00.

Court of Criminal Appeals of Texas. En Banc.

Nov. 15, 2000.

Melvin Carson Bruder, Dallas, for appellant.

John R. Rolater, Jr., Asst. Dist. Atty., Dallas, Matthew Paul, State's Atty., Austin, for the State.

WOMACK, J., delivered the opinion of the Court, in which McCORMICK, P.J., MEYERS, MANSFIELD, KELLER, PRICE, HOLLAND, and JOHNSON, JJ., joined.

Is a trial judge's ruling on an objection to illegally-obtained evidence rendered moot by a guilty verdict from a jury that was instructed to disregard illegally-obtained evidence? We hold that it is not.

This question arose in a prosecution for driving while intoxicated. With one exception, the facts are routine for such cases. Deputy Sheriff Miller was driving on a four-lane highway in Dallas when he saw the appellant's vehicle overtake him in the left lane and swerve in front of him in the right lane. He was forced to apply his brakes to avoid the appellant's vehicle. He pursued the appellant and she pulled her vehicle to the side of the road. Deputy Miller approached the appellant and smelled alcohol. About that time Dallas Police Officer Topp, who was passing by, offered assistance. He administered some sobriety tests and arrested the appellant.

The unusual feature of this case is that Miller was a deputy of the Sheriff of Bosque County. He had gone to Dallas on a training exercise, and was returning home when he encountered the appellant.

The appellant presented a written motion to suppress evidence to the county criminal court, which received written evidence. The appellant made three specific arguments to the court: (1) that Deputy Miller who made the initial traffic stop was "beyond his geographical jurisdiction," (2) that there was no proof that Deputy Miller witnessed a violation of the traffic laws, and (3) that no offense was committed in the presence or sight of Officer Topp who arrived at the scene and made the arrest, which meant that he had no authority un-

der Article 14.01 of the Code of Criminal Procedure to arrest the appellant without a warrant.[1] After a week's recess, the court heard more arguments of counsel on the motion to suppress evidence, including the appellant's Article 14.01 argument. The court denied the motion.

But on the day of trial the court allowed the appellant to reurge her motion. She again made the geographical-jurisdiction argument and the Article 14.01 argument. The court announced, "Motion to suppress evidence is being held," and proceeded to trial.

A jury was selected and the State's evidence was presented. The State called Deputy Miller who repeatedly and specifically testified that he stopped the appellant for a traffic violation, and that he did not detain her for DWI until he approached her car and observed signs of intoxication. The State also called Officer Topp and a third officer who had ridden to the jail with the appellant and Officer Topp. After the State rested, the appellant "renew[ed] her motion to suppress evidence based on the ground that, A, Mr. Miller arrested the defendant beyond his geographical jurisdiction for traffic violations and that such an arrest is not permissible under Article 14.01 or 14.03 of the Code of Criminal Procedure." The court denied the motion.

The appellant's witnesses were herself and the passenger who was in her car, neither of whom disputed Deputy Miller's account of the appellant's driving. The evidence was then closed.

The court denied the appellant's requested charge on illegally-obtained evidence, but the court did charge the jury on that issue in these terms:

You are instructed that under our law, a peace officer or any other person may,

1. "(a) A peace officer or any other person, may, without a warrant, arrest an offender when the offense is committed in his presence or within his view, if the offense is one classed as a felony or as an offense against the public peace.

"(b) A peace officer may arrest an offender without a warrant for any offense committed in his presence or within his view." TEX.CODE CRIM PROC. 14.01.

without a warrant, arrest an offender when the offense is committed in his presence or within his view, if the offense is one classed as a felony or an offense against the public peace.

You are instructed that under our law, traffic violations are not offenses against the public peace. You are further instructed that driving while intoxicated is an offense against the public peace.

No evidence obtained by an officer or other person in violation of any provisions of the Constitution or laws of the United States of America, shall be admitted in evidence against the accused on the trial of any criminal case.

Now bearing in mind these instructions, if you find from the evidence beyond a reasonable doubt that on the occasion in question, Deputy Sheriff Miller was acting as a peace officer or any other person, and placed the defendant under arrest without a warrant and that the offense for which the defendant was placed under arrest was one classed as a felony or an offense against the public peace, then such arrest would be legal and you will continue your deliberations. If you do not so find and believe beyond a reasonable doubt, or if you have a reasonable doubt thereof, then such arrest would be illegal and in such event the jury will disregard the evidence relative to the arrest of the defendant and you will not consider such evidence for any purpose whatsoever and you will return a verdict of not guilty.

In final argument the State did not refer to this instruction. The appellant urged the jury not to consider the evidence that was obtained after Deputy Miller stopped her. She also argued that the evidence failed to prove she was intoxicated. The jury found the appellant guilty. The court assessed punishment. This appeal followed.

The appellant's brief to the court of appeals raised four points of error, the first of which was that the trial court erred in "overruling" her motion to suppress evidence. The appellant presented her geographical-jurisdiction argument and her Article 14.01 argument. The court of appeals affirmed the judgment of conviction. *Pierce v. State*, 1999 WL 956301, No. 05–95–00725–CR, 1999 Tex.App. LEXIS 7775 (Tex.App.—Dallas, October 18, 1999) (not designated for publication). On the first point of error the court said:

At a hearing on a motion to suppress fruits of a warrantless arrest, the State must prove the arrest's legality by clear and convincing evidence. *Lalande v. State*, 676 S.W.2d 115, 116–17 (Tex. Crim.App.1984); *Johnson v. State*, 885 S.W.2d 578, 580 (Tex.App.-Dallas 1994, no pet.); *Foster v. State*, 767 S.W.2d 909, 911 (Tex.App.-Dallas 1989, pet. ref'd). When the trial court submits the issue of the legality of a warrantless arrest to the jury, the State must prove the arrest's or search's legality beyond a reasonable doubt. TEX. CODE CRIM. PROC. ANN. art. 38.23(a) (Vernon Supp.1999); *Johnson*, 885 S.W.2d at 580; *Peterson v. State*, 727 S.W.2d 125, 126 (Tex.App.-San Antonio 1987, no pet.); *see Lalande*, 676 S.W.2d at 118 n. 5. A jury submission on the arrest's legality under article 38.23(a) "relitigate(s) the issue before the jury." *Johnson*, 885 S.W.2d at 580; *Lalande*, 676 S.W.2d at 117; *see Peterson*, 727 S.W.2d at 126. When the jury returns a verdict of guilty, the jury has impliedly found the officers had probable cause to arrest. *See Johnson*, 885 S.W.2d at 580.

Although the trial court did not submit appellant's requested jury charge, the trial court submitted the ... jury instruction [that is set out above at 3–4.]

On appeal, appellant does not complain of the trial court's submitting this charge to the jury. This jury submission forced the State to assume a heavier burden of proof. The jury made a new and independent determination on the legality of the stop and subsequent search. The jury's implied finding supplants the trial court's denial of the mo-

tion to suppress. *See Johnson*, 885 S.W.2d at 580. We review only the jury's decision because it was the last determination of probable cause to arrest. *Id.*

By its verdict of guilty, the jury found Miller (or any other person) legally stopped appellant. *Id.* Appellant does not challenge the jury's consideration of the evidence or the sufficiency of the evidence to support the conviction if the jury disregarded the evidence as instructed. Appellant's complaints of the trial court's rulings on his motion to suppress as it regards Miller are immaterial. Appellant presents nothing for review. Appellant's first point of error is without merit as it regards Miller.

\* \* \*

Having determined that Miller properly arrested appellant, it follows that Miller properly transferred appellant to Topp's custody. Moreover, when Topp arrived at the scene, he saw appellant's condition. Under the totality of the circumstances, we conclude any reasonable factfinder could have found Topp had probable cause to arrest appellant for public intoxication. Appellant's first point of error is without merit as it regards Topp. We overrule appellant's first point of error.

We granted review of this already prolonged litigation.[2]

■ The Court of Appeals' decision in this case is based on its holding in *Johnson*, 885 S.W.2d at 580, which makes it necessary for us to examine the opinion in that case. Johnson was prosecuted for possession of cocaine with intent to deliver. Before trial he moved to suppress evidence (cocaine, money, and drug paraphernalia) that police officers had seized from his

automobile without a warrant. The district court denied the motion. At trial the court instructed the jury to disregard this evidence unless it believed beyond a reasonable doubt that the officer who seized it had probable cause to believe that Johnson's vehicle contained illegal narcotics. The jury returned a verdict of guilty. Johnson appealed the denial of his motion to suppress. The Court of Appeals said:

At a hearing on a motion to suppress the fruits of a warrantless search, the State must prove the search's legality by clear and convincing evidence. [Citation omitted.] However, when the trial court submits the issue of probable cause to the jury, the State must prove the arrest's or search's legality beyond a reasonable doubt. TEX. CODE CRIM. PROC. ANN. art. 38.23(a); *Peterson v. State*, 727 S.W.2d 125, 126 (Tex.App.—San Antonio 1987, no pet.); *see Lalande v. State*, 676 S.W.2d 115, 118 n. 5 (Tex. Crim.App.1984). A jury submission on the arrest's or search's legality under article 38.23(a) "relitigate[s] the issue before the jury." *Lalande*, 676 S.W.2d at 117; *see Peterson*, 727 S.W.2d at 126.

\* \* \*

This jury submission forced the State to assume a heavier burden of proof. The jury, by its verdict, impliedly found that the officers acquired probable cause to search. The jury's implied finding supplanted the trial court's denial of the motion to suppress. We review only the jury's decision because it was the last determination of probable cause to search.

On appeal, appellant does not challenge the jury's consideration of the disputed evidence or the sufficiency of the evidence if the jury disregarded that

---

**2.** The offense was alleged to have been committed on or about September 4, 1993. The pre-trial hearing was held on September 7, 1994. The trial began on April 18, 1995. The appellant's brief was filed on February 19, 1997. The court of appeals' original opinion was delivered on July 27, 1999. Rehearing was granted. On October 18, 1999, the court withdrew its original opinion and delivered another opinion affirming the judgment of conviction. The petition for discretionary review was filed on February 9, 2000, and granted on May 31. Briefing was completed on August 16. The case was submitted to us on October 18, 2000.

evidence as the trial court instructed. Appellant's complaints about the trial court's rulings on his motion to suppress are immaterial. The jury's verdict subsumed the trial court's denial. Appellant presents nothing for review.[3]

We begin our consideration of these holdings by comparing the scope of a motion to suppress evidence, or an objection to evidence, with the scope of an instruction to the jury to disregard unlawfully obtained evidence. These procedural devices are based on two sentences in Article 38.23(a) of the Code of Criminal Procedure.

■■■ The first sentence speaks to the admissibility of evidence: "No evidence obtained by an officer or other person in violation of any provisions of the Constitution or laws of the State of Texas, or of the Constitution or laws of the United States of America, shall be admitted in evidence against the accused on the trial of any criminal case." The admissibility of evidence is a matter for the court.[4] The decision to exclude evidence could be determined by a ruling of law, a finding of fact, or both.[5] The question of admissibility could be raised by an objection when the evidence is offered. Since 1966 it has been possible to raise the question by a motion to suppress evidence, which can be filed, presented, heard, and ruled on before the trial begins.[6]

■■■ The second sentence of the statute speaks to the jury instruction: "In any case where the legal evidence raises an issue hereunder, the jury shall be instructed that if it believes, or has a reasonable doubt, that the evidence was obtained in violation of the provisions of this Article, then and in such event, the jury shall disregard any such evidence so obtained." This sentence can operate only if the trial court has admitted evidence, and only if there is a contested issue of fact about the obtaining of the evidence. This has been our holding from the earliest days of the statute,[7] and it is our holding today. There is no issue for the jury when the question is one of law only.[8]

To hold that a jury's verdict returned under the statute's second sentence supplants the trial court's ruling made under the statute's first sentence would render unreviewable the court's decisions on questions of law. For this reason alone, the holding of *Johnson* cannot be a correct, general rule.

This case provides an illustration. It was undisputed that Deputy Miller stopped the appellant for traffic violations that he saw. The appellant did not deny driving in the manner that Deputy Miller

---

**3.** *Johnson,* 885 S.W.2d at 580–81.

**4.** "Preliminary questions concerning ... the admissibility of evidence shall be determined by the court." TEX.R. EVID. 104(a). *See, e.g., Maldonado v. State,* 998 S.W.2d 239, 246 (Tex.Cr.App.1999) ("At worst, the anomalies [in a tape-recorded statement that had two 'over-records' lasting four seconds] could have rendered the tape inaccurate and, therefore, inadmissible, but this was a determination for the trial judge, not the jury").

**5.** *See generally Guzman v. State,* 955 S.W.2d 85 (Tex.Cr.App.1997).

**6.** *See Young v. State,* 8 S.W.3d 656, 663 (Tex. Cr.App.2000).

**7.** The statute that was the predecessor of the first sentence of Article 38.23 was enacted in 1925. *See* Act of March 9, 1925, 39th Leg., R.S., ch. 49, § 1, 1925 Tex. Gen. Laws 186. We soon held, "Whether the information the officers had received constituted 'probable cause' was a question primarily for the court and could have been investigated in the absence of the jury.... If it should become an issue whether the facts existed which are claimed to constitute 'probable cause,' it would be proper to submit the issue to the jury." *McPherson v. State,* 108 Tex. Crim. 265, 266, 300 S.W. 936, 937 (1927). In 1965 the procedure of submitting questions of fact to the jury was codified in the second sentence of the statute. Code of Criminal Procedure Act, 59th Leg., R.S., ch. 722, § 1, art. 38.23, 1965 Tex. Gen. Laws, vol. 2, p. 317, 470.

**8.** *Bell v. State,* 938 S.W.2d 35, 48 (Tex.Cr.App. 1996).

described. The trial court rejected the appellant's argument that the deputy had no authority to stop her for such violations outside the county of his appointment. This question of law was not, and could not properly have been, submitted to the jury. There has been no appellate review of the trial court's ruling.

The narrower holding of *Johnson,* that the jury's implied finding of fact supplants the trial court's finding of fact, is one we do not accept. The reasons have been developed in cases that deal with a related issue of evidence: confessions.

To leave to a jury alone the factual issue of the voluntariness of a confession is to deny due process of law.[9] One reason why the Supreme Court held so in *Jackson v. Denno* is that a jury could not be relied on to make a correct decision on voluntariness after hearing the substance of the confession.

> Precisely because confessions of guilt, whether coerced or freely given, may be truthful and potent evidence, we did not believe a jury could be called upon to ignore the probative value of a truthful but coerced confession; it was also likely, we thought, that in judging voluntariness itself the jury would be influenced by the reliability of a confession it considered an accurate account of the facts. "It is now axiomatic," we said, "that a defendant in a criminal case is deprived of due process of law if his conviction is founded, in whole or in part, upon an involuntary confession, without regard for the truth or falsity of the confession, and even though there is ample evidence aside from the confession to support the conviction. Equally clear is the defendant's constitutional right at some stage in the proceedings to object to the use of the confession and to have a fair hearing and a reliable determination on the issue

of voluntariness, a determination uninfluenced by the truth or falsity of the confession."

> \* \* \*

> But our decision was not based in the slightest on the fear that juries might misjudge the accuracy of confessions and arrive at erroneous determinations of guilt or innocence. That case was not aimed at reducing the possibility of convicting innocent men.

> Quite the contrary, we feared that the reliability and truthfulness of even coerced confessions could impermissibly influence a jury's judgment as to voluntariness. The use of coerced confessions, whether true or false, is forbidden because the method used to extract them offends constitutional principles. The procedure we established in *Jackson* was designed to safeguard the right of an individual, entirely apart from his guilt or innocence, not to be compelled to condemn himself by his own utterances.[10]

This individual right required a judge to decide in a hearing, outside the presence of the jury, whether the confession was involuntary.

> The sole issue in such a hearing is whether a confession was coerced. Whether it be true or false is irrelevant; indeed, such an inquiry is forbidden. The judge may not take into consideration evidence that would indicate that the confession, though compelled, is reliable, even highly so. As difficult as such tasks may be to accomplish, the judge is also duty-bound to ignore implications of reliability in facts relevant to coercion and to shut from his mind any internal evidence of authenticity that a confession itself may bear.[11]

The decision of a jury that is not trained in this difficult task is simply not reliable enough to provide due process of law.

---

9. See *Jackson v. Denno,* 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964); *accord Lopez v.. State,* 384 S.W.2d 345 (Tex.Cr.App.1964).

10. *Lego v. Twomey,* 404 U.S. 477, 483–85, 92 S.Ct. 619, 30 L.Ed.2d 618 (1972) (quoting

*Jackson v. Denno, supra*) (citations and footnotes omitted).

11. *Id.* at 484 n. 12, 92 S.Ct. 619, (citation omitted).

A defendant likewise has a right, entirely apart from guilt or innocence, not to be convicted with illegally obtained evidence. This right is based in part on the Fourth and Fourteenth Amendments to the United States Constitution,[12] and in part on Article 38.23, a statute enacted by our legislature and governor in 1925 and reenacted four times thereafter. The decision of a judge is necessary for a defendant to have a fair hearing and a reliable determination of the legality with which evidence was obtained. The jury is given a role to be "a backup protection against erroneous judicial rulings" that have admitted evidence, not to supplant them .[13] Just as the task of determining the voluntariness of a confession without being distracted by its reliability is too difficult to be left to the jury alone, so is the task of determining the legality of the means by which evidence was obtained without being distracted by its probative value.

This case may furnish an illustration. The court's charge authorized the jury to convict only if it found that Deputy Miller, whether he was acting as an officer or as a person who was not an officer ("an other person," in the terms of the statute), had placed the defendant under arrest without a warrant for an offense that was a felony or against the public peace. No offense committed in Miller's presence or view was a felony, and the jury were instructed that traffic violations were not offenses against the public peace, so the only offense for which Miller legally could have arrested the appellant was driving while intoxicated. Before he stopped her, Miller had no evidence that the appellant was intoxicated. If, as the court of appeals said, "[b]y its verdict of guilty, the jury found Miller (or any other person) legally stopped appellant," and under the court's instruction the stop could only have been legal if it were for DWI, the jury's finding must have been based on evidence of intoxication that Miller obtained after he made the stop. Such evidence could not justify the stop.

When we said in *Lalande* that "no jury is present during a hearing on suppression of evidence, although a defendant may choose to re-litigate the issue before the jury," we were emphasizing that a judge may hear and rely on a greater scope of evidence than a jury .[14] This furnishes no support for a holding that "relitigating the issue" means supplanting the court's ruling. When a trial court has denied a motion to suppress evidence, the verdict of guilty from a jury that was charged to disregard illegally obtained evidence does not prevent the defendant from appealing the court's ruling. This was the procedure followed in another case that the court of appeals cited to support the opposite holding.[15] It should be followed in this case.

Even when a jury's verdict of guilty necessarily means that it found that essential evidence was not obtained in violation of the constitutions and laws of the United States and of this state, such a finding cannot supplant the trial court's ruling on a motion to suppress evidence. The judgment of the court of appeals is reversed and the case is remanded for further consideration consistent with this opinion.

KEASLER, J., concurs in the judgment.

12. *See Mapp v. Ohio,* 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961).

13. GEORGE E. DIX & ROBERT O. DAWSON, 40 TEXAS PRACTICE—CRIMINAL PRACTICE AND PROCEDURE § 4.103 (1995).

14. *Lalande v. State,* 676 S.W.2d 115, 117 (Tex. Cr.App.1984) (holding that hearsay evidence had greater probative value in a hearing without a jury than it would in a jury trial).

15. *See Peterson v. State,* 727 S.W.2d 125, 126 (Tex.App.—San Antonio 1987, no pet.) ("The trial judge initially found clear and convincing evidence of the voluntary consent, and the jury thereafter found voluntary consent beyond a reasonable doubt. . . . We find the trial court correctly denied the motion to suppress").